**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ROGELIO DIAZ, BONAFACIO FERNANDEZ, )**<br>**RAUL FERNANDEZ, MARCO GONZALEZ )**<br>**MARTIN MARTINEZ, FREDERICO )**<br>**QUIJANO, and GILBERTO RAMIREZ, )**<br>**)**<br>**Plaintiffs, )**<br>**)**<br>**v. )**<br>**)**<br>**EMPIRE TODAY, LLC, dba LUNA )**<br>**FLOORING, and CARPET WORKSHOP, LLC,)**<br>**)**<br>**Defendants. )** | **Case No.: 17-cv-4287**<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs ROGELIO DIAZ ("DIAZ"), BONAFACIO FERNANDEZ ("B. FERNANDEZ"), RAUL FERNANDEZ ("R. FERNANDEZ"), MARCO GONZALEZ ("GONZALEZ"), MARTIN MARTINEZ ("MARTINEZ"), FREDERICO QUIJANO ("QUIJANO"), and GILBERTO RAMIREZ ("RAMIREZ"), (collectively "Plaintiffs" or "Installers"), by and through their attorney, Brian D. Massatt bring this lawsuit against Empire Today, LLC dba Luna Flooring ("Empire") and Carpet Workshop, LLC ("CW") (collectively "Defendants") for unpaid overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 280 ILCS §§ 105/1 *et seq.* ("IMWL"). In support, Plaintiffs allege as follows:

**INTRODUCTION**

1.    Installers worked up to 90 hours in a single week for Defendants and were fully dependent on Defendants for their livelihood.

2.      Even though Defendants controlled pay rates and deductions, scheduling and planning of jobs, restricted Installers from working for competitors, and disciplined Installers, Defendants treated the Installers as independent contractors and failed to pay overtime rates for work over 40 in a week as required under the FLSA and IMWL.

**JURISDICTION AND VENUE**

3.      This Court has original jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' IMWL claim under 28 U.S.C. § 1367.

4.      Venue is proper in this Court as all Installers and both Defendants reside and transacted business in Cook County, Illinois.

**PARTIES**

5.      Defendants Carpet Workshop and Empire are both Limited Liability Corporations managed by the same person from the same location in Northlake, Illinois.

6.      Defendants are in the business of selling and providing carpet and installation services under the name of Empire Today and Luna, to their customers in Illinois and adjoining states.

7.      Defendants are an enterprise engaged in commerce as defined under 29 U.S.C. § 203(s).

8.      All Plaintiffs are of Mexican heritage with English as a second language.

9.      At all relevant times, Installers installed carpets for Empire customers as directed by Defendants.

10.     At all relevant times, Installers resided in Cook County, Illinois.

**FACTS**

11.     Defendants contracted for Installers to install Empire's carpet at Empire's customer locations.

12.     Defendants subjected Installers to personal background checks.

13.     Defendants prevented Installers from placing mechanics liens on any installation jobs.

14.     Defendants contracted Installers for an indefinite period of time and prevented Installers from installing carpet for anyone but Empire.

15.     Defendants' sales personnel visited customer locations and planned the installations the Installers would perform.

16.     Defendants unilaterally determined how much pay Installers would earn for each job, how many jobs Installers would do each day, and often the order the daily jobs must be performed.

17.     Defendants subjected Installers to discipline by way of suspension of work and pay, if the installer failed to perform to Defendants' satisfaction.

18.     Defendants required Installers to hire helpers for larger jobs.

**INSTALLER ROGELIO DIAZ**

19.     DIAZ installed carpet for Defendants from 2008 - present.

20.     DIAZ typically worked up to 90 hours a week installing carpets for Defendants.

21.     Defendants paid DIAZ a fixed amount per job.

22.     Defendants did not pay DIAZ one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

23.     Defendants required DIAZ to have a corporation in order to install carpet for Defendants.

24.     DIAZ formed Rogers Carpet, Inc. so that he could install carpet for Defendants.

25.     DIAZ was President, Owner and the only installer at Rogers Carpet, Inc.

26.     DIAZ and Rogers Carpet, Inc. contracted to install carpet for Defendants.

27.     Defendants informed DIAZ that if he wanted to work he had to sign agreements.

28.     Defendants required Rogers Carpet, Inc. to provide insurance that protected Defendants.

29.     Defendants reserved the right to make deductions from DIAZ' pay.

30.     Rogers Carpet, Inc. existed solely to permit DIAZ to install carpet for Defendants.

31.     Defendants agreement with DIAZ and Rogers Carpet, Inc. rendered DIAZ fully dependent upon Defendants.

32.     Defendants gave DIAZ 2 or more days off work if he refused an assigned job.

33.     Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented DIAZ from using managerial skill to increase his profits.

34.     Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to DIAZ.

**INSTALLER BONAFACIO FERNANDEZ**

35.     B. FERNANDEZ installed carpet for Defendants from 2008 - 2015.

36.     B. FERNANDEZ typically worked at least 60 hours a week installing carpets for Defendants.

37.     Defendants paid B. FERNANDEZ a fixed amount per job.

38.     Defendants did not pay B. FERNANDEZ one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

39.     Defendants required B. FERNANDEZ to have a corporation in order to install carpet for Defendants.

40.     B. FERNANDEZ formed Fernandez Carpet, Inc. so that he could install carpet for Defendants.

41.     B. FERNANDEZ was President, Owner and the only installer at Fernandez Carpet, Inc.

42.     B. FERNANDEZ and Fernandez Carpet, Inc. contracted to install carpet for Defendants.

43. When B. FERNANDEZ came to work his assigned jobs, Defendants handed him the signature page of an agreement and informed B. FERNANDEZ that if he wanted to work he had to sign.

44. B. FERNANDEZ signed without reading the agreements.

45. Defendants required Fernandez Carpet, Inc. to provide insurance that protected Defendants.

46. Defendants reserved the right to make deductions from B. FERNANDEZ pay.

47. Fernandez Carpet, Inc. existed solely to permit B. FERNANDEZ to install carpet for Defendants.

48. Defendants agreement with B. FERNANDEZ and Fernandez Carpet, Inc. rendered B. FERNANDEZ fully dependent upon Defendants.

49. When B. FERNANDEZ declined to work a job, Defendants suspended job assignments to B. FERNANDEZ for a week.

50. Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented B. FERNANDEZ from using managerial skill to increase his profits.

51. Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to B. FERNANDEZ.

**INSTALLER RAUL FERNANDEZ**

52. FERNANDEZ installed carpet for Defendants from 2003 - present.

53. FERNANDEZ typically worked up to 90 hours a week installing carpets for Defendants.

54. Defendants paid FERNANDEZ a fixed amount per job.

55. Defendants did not pay FERNANDEZ one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

56.     Defendants required R. FERNANDEZ to have a corporation in order to install carpet for Defendants.

57.     FERNANDEZ formed Fernandez Carpet Service, Inc., so that he could install carpet for Defendants.

58.     FERNANDEZ was President, Owner and the only installer at Fernandez Carpet Service, Inc.

59.     FERNANDEZ and Fernandez Carpet Service, Inc. contracted to install carpet for Defendants.

60.     Defendants did not allow FERNANDEZ to negotiate terms, or have the agreements between Defendants and Fernandez Carpet Service, Inc. translated or reviewed by an attorney.

61.     Defendants informed FERNANDEZ that if he wanted to work he had to sign the agreements.

62.     Defendants agreement with R. FERNANDEZ and Fernandez Carpet Service, Inc. rendered R. FERNANDEZ fully dependent upon Defendants.

63.     Defendants assigned R. FERNANDEZ jobs daily.

64.     Sometimes Defendants told R. FERNANDEZ the order and times of day to do jobs.

65.     When R. FERNANDEZ declined to work a job, Defendants' supervisor Janine Bea suspended job assignments to R. FERNANDEZ for a week or more.

66.     Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented R. FERNANDEZ from using managerial skill to increase his profits.

67.     Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to R. FERNANDEZ.

**INSTALLER MARCO GONZALEZ**

68.     GONZALEZ installed carpet for Defendants from 2006 - present.

69.     GONZALEZ typically worked 72 - 80 hours a week installing carpets for Defendants.

70.     Defendants paid GONZALEZ a fixed amount per job.

71.     Defendants did not pay GONZALEZ one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

72.     Defendants required GONZALEZ to have a corporation in order to install carpet for Defendants.

73.     GONZALEZ formed GH Carpet Company, Inc. so that he could install carpet for Defendants.

74.     GONZALEZ was President, Owner and the only installer at GH Carpet Company, Inc.

75.     GONZALEZ and GH carpet Company, Inc. contracted to install carpet for Defendants.

76.     Defendants gave GONZALEZ two or three minutes to sign the agreements and get back to work.

77.     Defendants required GH Carpet Company, Inc. to provide insurance that protected Defendants.

78.     Defendants reserved the right to make deductions from GONZALEZ's pay.

79.     GH Carpet Company, Inc. existed solely to permit GONZALEZ to install carpet for Defendants.

80.     Defendants agreement with GH Carpet Company, Inc. rendered GONZALEZ fully dependent upon Defendants.

81.     Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented GONZALEZ from using managerial skill to increase his profits.

7

82.     Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to GONZALEZ.

**INSTALLER MARTIN MARTINEZ**

83.     MARTINEZ installed carpet for Defendants from 2012 - present.

84.     MARTINEZ typically worked 72–84 hours a week installing carpets for Defendants.

85.     Defendants paid MARTINEZ a fixed amount per job.

86.     Defendants did not pay MARTINEZ one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

87.     Defendants required that MARTINEZ have a corporation in order to install carpet for Defendants.

88.     MARTINEZ formed Martin M. Carpet Services, Inc., so that he could install carpet for Defendants.

89.     MARTINEZ was President, Owner and the only installer at Martin M. Carpet Services, Inc.

90.     MARTINEZ contracted to install carpet for Defendants through Martin M. Carpet Services, Inc.

91.     Defendants did not allow MARTINEZ to negotiate terms, or have the agreements between him and Martin M. Carpet Services, Inc. and Defendants translated or reviewed by an attorney.

92.     Defendants' installer supervisor, Janine, only gave MARTINEZ the signature page of the agreement and told him to sign it and go back to work.

93.     Defendants required Martin M. Carpet Services, Inc. to provide insurance that protected Defendants.

94.    Defendants reserved the right to make deductions from MARTINEZ pay.

95.    Martinez M. Carpet Services, Inc. existed solely to permit MARTINEZ to install carpet for Defendants.

96.    Defendants agreement with MARTINEZ and Martin M. Carpet Services, Inc. rendered MARTINEZ fully dependent upon Defendants.

97.    Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented MARTINEZ from using managerial skill to increase his profits.

98.    When MARTINEZ declined to work late to compensate for Defendants' erroneous installation planning, Defendants suspended job assignments to MARTINEZ for a week.

99.    Defendants' installation supervisor, Janine, told MARTINEZ that if he didn't want to do the late job, he knows what will happen.

100.    Following that week suspension, Defendants continued to assign jobs to MARTINEZ.

101.    Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to MARTINEZ.

**INSTALLER FREDERICO QUIJANO**

102.    QUIJANO installed carpet for Defendants from 1992 - present.

103.    QUIJANO worked 60 or more hours in some weeks installing carpets for Defendants.

104.    Defendants paid QUIJANO a fixed amount per job.

105.    Defendants did not pay QUIJANO one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

106.    Defendants required QUIJANO to have a corporation in order to install carpet for Defendants.

107.   QUIJANO formed Fredy Carpets & Flooring, Inc. so that he could install carpet for Defendants.

108.   QUIJANO was the Owner, President and only installer at Fredy Carpets & Flooring, Inc.

109.   QUIJANO and Fredy Carpets & Flooring, Inc. contracted to install carpet for Defendants.

110.   Defendants did not allow QUIJANO to negotiate terms, or have the agreements between him and Fredy Carpets & Flooring, Inc. and Defendants translated or reviewed by an attorney.

111.   Defendants informed QUIJANO that if he wanted to work he had to sign the agreements.

112.   Defendants required Fredy Carpets & Flooring, Inc. to provide insurance that protected Defendants.

113.   Defendants reserved the right to make deductions from QUIJANO's pay.

114.   Fredy Carpets & Flooring, Inc. existed solely to permit QUIJANO to install carpet for Defendants.

115.   Defendants agreement with Fredy Carpets & Flooring, Inc. rendered QUIJANO fully dependent upon Defendants.

116.   Defendants' supervisor gave QUIJANO 5 days off after he refused a job.

117.   Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented QUIJANO from using managerial skill to increase his profits.

118.   Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to QUIJANO.

**INSTALLER GILBERTO RAMIREZ**

119.   RAMIREZ installed carpet for Defendants from 2005 - present.

120.   RAMIREZ typically worked over 80 hours a week installing carpets for Defendants.

121.   Defendants paid RAMIREZ a fixed amount per job.

122.    Defendants did not pay RAMIREZ one and one-half his regular rate of pay for time worked over 40 hours in a week as required under the FLSA and IMWL.

123.    Defendants required RAMIREZ to have a corporation in order to install carpet for Defendants.

124.    RAMIREZ formed Ramirez Carpet, Inc., so that he could install carpet for Defendants.

125.    RAMIREZ was President, Owner and the only installer at Ramirez Carpet, Inc.

126.    RAMIREZ contracted to install carpet for Defendants through Ramirez Carpet, Inc.

127.    Defendants did not allow RAMIREZ to negotiate terms, or have the agreements between him and Ramirez Carpet, Inc. and Defendants translated or reviewed by an attorney.

128.    Defendants informed RAMIREZ that if he wanted to work he had to sign the agreements.

129.    Defendants required Ramirez Carpet, Inc. to provide insurance that protected Defendants.

130.    Defendants reserved the right to make deductions from RAMIREZ pay.

131.    Ramirez Carpet, Inc. existed solely to permit RAMIREZ to install carpet for Defendants.

132.    Defendants agreement with Ramirez Carpet, Inc. rendered RAMIREZ fully dependent upon Defendants.

133.    When RAMIREZ refused a job, Defendants suspended his assignments for 1-2 days.

134.    Defendants' control over the number of jobs, scheduling of jobs, rates of pay, and other things prevented RAMIREZ from using managerial skill to increase his profits.

135.    Defendants' pay and deduction records will be needed to determine the exact amount of wages unpaid to RAMIREZ.

WHEREFORE, Plaintiffs respectfully request the following:

(a)  A declaratory judgment that Plaintiffs are Defendants' employees under the FLSA and IMWL;

(b)  A declaratory judgment that Defendants violated the maximum hours provisions of the FLSA, 29 U.S.C. 207, and IMWL, 820 ILCS 105/4a;

(c)  A declaratory judgment that Defendants' FLSA violations were willful;

(d)  An award to plaintiffs of an amount equal to the unpaid overtime wages to be determined at trial;

(e)  An award of an equal amount as liquidated damages shown to be owed under the FLSA;

(f)  An award of 2% per month damages shown to be owed under the IMWL;

(g)  An award to Plaintiffs of reasonable costs and attorney fees; and

(h)  An award of such other relief as this Court deems just.

Submitted on behalf of Plaintiffs

ROGELIO DIAZ, BONAFACIO FERNANDEZ, RAUL FERNANDEZ, MARTIN MARTINEZ, FREDERICO QUIJANO, and GILBERTO RAMIREZ

By: ___/s/ *Brian D. Massatt*_____
Attorney for Plaintiffs

June 7, 2017

Brian D. Massatt
8824 Glenshire Street
Tinley Park, Illinois 60487
(815) 685-4192